# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

JUSTIN RIDER,

    Plaintiff,

    v.

D. TRISTAN, et al.,

    Defendants.

Case No. 2:16-cv-02633-RFB-PAL

**ORDER**

### I. INTRODUCTION

Before the Court is Defendants' Motion for Summary Judgment (ECF No. 57) and Plaintiff's Motion for Leave of Court to File Untimely Supporting Memorandum of Law in Response to Motion for Summary Judgment (ECF No. 70). In Count One, Plaintiff alleges a Sixth Amendment right of self-representation claim against all Defendants. In Count Two, Plaintiff alleges a procedural due process claim against Defendants Tristan, Neven, Fiero, and Nash. In Count Three, Plaintiff alleges a First Amendment mail violations claim against Defendants Tristan, Neven, and Barrett. In Count Four, Plaintiff alleges a retaliation claim against all Defendants. In all counts, Plaintiff sues Defendants in both their personal and official capacities.

For the reasons stated below, the Court grants the motion for summary judgment as to Count One against all Defendants in their personal capacities and Counts Three and Four against all Defendants in both their personal and official capacities. The Court denies the motion as to Count One against all Defendants in their official capacities and as to Count Two against Defendants Tristan, Neven, Fiero, and Nash in both their personal and official capacities.

///

///

The Court also grants Plaintiff's Motion but notes that the authorities cited in Plaintiff's Supporting Memorandum are non-controlling district court cases and do not constitute clearly established law. See Carrillo v. Cty. of Los Angeles, 798 F.3d 1210, 1221 (9th Cir. 2015).

## II. FACTUAL BACKGROUND

### A. Undisputed Facts

The Court finds the following facts to be undisputed.

On April 15, 2015, Plaintiff arrived at High Desert State Prison ("HDSP") as a pretrial detainee pursuant to a safekeeper agreement between Nevada Department of Corrections ("NDOC") and Esmerelda County Sheriff's Office ("ECSO"). Plaintiff is representing himself in his state criminal proceedings (with the assistance of appointed advisory counsel) and faces the possibility of life without the possibility of parole.

Upon arriving at HDSP, Plaintiff was immediately housed in the "fish tank." Phones and law library access were not available. In June 2015, Plaintiff was moved to administrative segregation. Plaintiff remained in administrative segregation until January 23, 2017, when Plaintiff was transferred to ECSO.

During his time in administrative segregation, Plaintiff received at least some legal supplies through a written request system. Plaintiff did not receive all of his requested supplies. Plaintiff was subject to the same policies that applied to other inmates, including a limit to 10 items checked out from the law library at a time and a $100 legal copy limit. Law library staff dropped off materials for Plaintiff but did not answer legal questions for Plaintiff or provide any consultations.

Plaintiff received some phone access, but it was limited and was not at his requested times. Plaintiff received the phone thirteen days in October 2016, ten days in November 2016, and six days in December 2016. Plaintiff also received six legal visits during his time at HDSP.

In May 2016, Plaintiff received a piece of legal mail from the Nevada Supreme Court seven days after it was mailed. On another occasion, a prison staff member opened Plaintiff's legal mail, removed photos of a minor, and declared that there were photos of children in there in front of other inmates. This statement caused other inmates to harass Plaintiff.

Upon transfer to ECSO in January 2017, Plaintiff was permitted to request legal materials available on the internet from staff on an unrestricted basis. In April 2017, ECSO staff provided Plaintiff with a laptop computer and the LEXIS law library database. Plaintiff was initially allowed to use the laptop for two to three hours per day and later was allowed up to seven hours of direct access. At ECSO, Plaintiff is permitted access to a phone from 6:00 am to 10:00 pm each day and legal visits when requested.

### B. Disputed Facts

The parties dispute whether Plaintiff received any process regarding his placement and approximately nineteen-month stay in administrative segregation. Defendants attach a declaration by Jennifer Nash, Associate Warden. She states that, according to prison records, Plaintiff met with a classification committee on May 5, 2015 and again on May 11, 2015, when he was informed that he would be placed in administrative segregation due to his safe-keeper status. She also states that records indicate that HDSP reviewed Plaintiff's placement in administrative segregation on June 8, 2015; September 14, 2015; October 29, 2015; December 9, 2015; February 9, 2016; March 7, 2016; April 8, 2016; April 18, 2016; May 5, 2016; June 6, 2016; August 8, 2016; October 5, 2016; November 14, 2015; December 19, 2016; and January 18, 2017. The parties dispute whether grievance denials indicate that Plaintiff had a hearing on May 5 in response to Plaintiff's grievances representing that he never had a hearing. Defendants do not, however, provide an actual record of either of the alleged May hearings.

### III. PROCEDURAL BACKGROUND

Plaintiff submitted the Complaint and IFP application on November 14, 2016. ECF No. 1-2. The Court screened the Complaint on January 7, 2017 and dismissed the Complaint in its entirety without prejudice. ECF No. 5.

Plaintiff filed an amended complaint on March 23, 2017. ECF Nos. 23, 27. The Court screened the First Amended Complaint on March 31, 2017. ECF No. 28. The Court allowed all three claims to proceed.

///

On August 22, 2017, the parties stipulated to the filing of Plaintiff's Second Amended Complaint adding a fourth claim, which the Court approved. ECF Nos. 41, 42. Defendants filed an Answer on September 1, 2017. ECF No. 43.

On December 21, 2016, Plaintiff filed a motion for preliminary injunction regarding his alleged limitations in access to legal materials. ECF No. 3. The Court held a hearing on January 13, 2017. ECF No. 10. The Court denied the motion without prejudice to give prison staff an opportunity to address Plaintiff's complaints regarding his access to legal materials. The Court found that Plaintiff had not established a likelihood of success on the merits.

On February 14, 2017, Plaintiff filed a second motion for preliminary injunction regarding his alleged retaliatory transfer. The Court held a hearing on March 23, 2017. ECF No. 26. The Court confirmed that Plaintiff changed custody from NDOC to Esmeralda County Sheriff's office. The Court noted that NDOC had no legal obligation to hold Plaintiff and could transfer him freely. The Court denied the motion because Defendants no longer had custody of Plaintiff and because there was no likelihood of success on the merits, as the Court lacked authority to transfer Plaintiff from Esmerelda County.

Discovery concluded in this case on May 14, 2018. ECF No. 52. Defendants filed the instant Motion for Summary Judgment on July 17, 2018. ECF No. 57.

The Court held a hearing on this motion on January 14, 2019. On January 18, 2019, Plaintiff filed the instant Motion for Leave of Court to File Untimely Supporting Memorandum of Law in Response to Motion for Summary Judgment. ECF No. 70.

**IV. LEGAL STANDARD**

    **a. Summary Judgment**

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most

favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (citation and internal quotation marks omitted) (alteration in original).

### b. Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009). Qualified immunity is an immunity from suit rather than a defense to liability, and "ensures that officers are on notice their conduct is unlawful before being subjected to suit." Tarabochia v. Adkins, 766 F.3d 1115, 1121 (9th Cir. 2014). In deciding whether officers are entitled to qualified immunity, courts consider, taking the facts in the light most favorable to the nonmoving party, whether (1) the facts show that the officer's conduct violated a constitutional right, and (2) if so, whether that right was clearly established at the time. Id. Under the second prong, courts "consider whether a reasonable officer would have had fair notice that the action was unlawful." Id. at 1125 (internal quotation marks omitted). While a case directly on point is not required in order for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083 (2011). This ensures that the law has given officials "fair warning that their conduct is unconstitutional." Ellins v. City of Sierra Madre, 710 F.3d 1049, 1064 (9th Cir. 2013) (internal citation omitted).

In deciding a claim of qualified immunity where a genuine issue of material fact exists, the court accepts the version asserted by the non-moving party. Ellins v. City of Sierra Madre, 710 F.3d 1049, 1064 (9th Cir. 2013). Summary judgment must be denied where a genuine issue of material fact exists that prevents a finding of qualified immunity. Sandoval v. Las Vegas Metropolitan Police Dept., 756 F.3d 1154, 1160 (9th Cir. 2014).

## V. DISCUSSION

### a. Count One

In Count One, Plaintiff alleges that Defendants violated his Sixth Amendment right of self-representation by limiting his access to legal materials and phone calls to his lawyer. Defendants identify that Plaintiff's access was consistent with operations procedures and the limitations imposed on other HDSP inmates in administrative segregation. Defendants argue that these limitations are within constitutional limits and that Plaintiff was entitled to no special treatment. Even if the limitations were not constitutional, Defendants argue that such law is not clearly established and qualified immunity applies.

#### i. Qualified Immunity

It is clearly established that "[a]n incarcerated defendant may not meaningfully exercise his right to represent himself without access to law books, witnesses, or other tools to prepare a defense." Milton v. Morris, 767 F.2d 1443, 1446 (9th Cir. 1985). However, "while a prison must take steps to provide incarcerated defendants with reasonable access to legal materials, the rights of a *pro se* defendant must be balanced against institutional resource constraints." United States v. Sarno, 73 F.3d 1470, 1491 (9th Cir. 1995) (noting that five hours of library access per week during trial was "troubl[ing]" and "hardly ideal" but not violative of the First Amendment). There is no clearly established law holding that the level of access described by Plaintiff is constitutionally inadequate. It is undisputed that Plaintiff received some access and that his access was comparable to the access provided to other NDOC inmates.

Plaintiff argues that, as a pretrial detainee representing himself in ongoing criminal proceedings, he required more library access and phone calls than post-conviction inmates. However, no clearly established law preserves a special privilege to materials or phone calls on the basis of Plaintiff's status as a self-representing pretrial detainee. Therefore, prison staff members did not behave unreasonably in subjected Plaintiff to the same limitations as other inmates regarding access to legal materials and phone calls. Qualified immunity applies to bar the claim against Defendants in their personal capacity.

### ii. Summary Judgment

Though Defendants cannot be held personally liable for the enforcement of the prison's access policies, Defendants may be liable in their official capacities. Official-capacity law suits are another way of "another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165–66 (1985) (quoting Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690, n.55 1978). Therefore, the qualified immunity defense is unavailable. Id.

A genuine dispute of material fact remains as to whether the limitations on access to legal materials, use of the telephone, and visits with counsel imposed by Defendants pursuant to HDSP policy violated Plaintiff's right to self-representation. It is uncontested that Plaintiff was denied legal materials on more than one occasion pursuant to the 10-item limit. It is further uncontested that Plaintiff's telephone access was limited: specifically, that Plaintiff was unable to request the phone at specific times requested and that legal calls were limits to thirty minutes.

Plaintiff alleges that these limitations prevented effective legal research and impeded communication with his advisory counsel, resulting in several harms. Specifically, Plaintiff alleges that due to these limitations, he (1) was unable to discover that his conviction for stalking was unconstitutional before the challenge became untimely; (2) is unable to discover the appropriate procedural vehicle to seek a new trial with the Nevada state court; (3) faces a procedural bar and the threat of being labeled a vexatious litigant by the Fifth District Judicial Court of Nevada because he used the wrong procedural vehicle to seek a new trial; (4) has been unable to challenge a pending adoption of his child and seek parental rights; (5) has faced a delayed trial because his counsel stipulated to waive his right to a speedy preliminary hearing and speedy trial without his knowledge of consent; (6) has filed a petition for writ of habeas corpus in the wrong court and is now procedurally barred from filing another writ despite his ongoing illegal confinement; and (7) was unable to receive a bond hearing for almost a year, and was prejudiced by the delay because he may have been able to post the ultimately-reduced bond if he had received a bond hearing a year earlier.

///

Plaintiff raises a genuine dispute as to whether he was able to meaningfully exercise his right to represent himself under HDSP's policy. The balancing between Plaintiff's rights and institutional resource constraints must be conducted by a jury. The Court denies the motion for summary judgment as to Count One against Defendants in their official capacity.

### b. Count Two

In Count Two, Plaintiff alleges that Defendants violated his procedural due process rights when they housed him in administrative segregation from June 2015 to January 2017 without providing him any process. Defendants argue that Plaintiff's long-term stay in administrative segregation was non-punitive and therefore no process was required. Defendants alternatively argue that if process was required, it was satisfied by two May 2015 classification committee hearings and several written placement reviews. Lastly, Defendants argue that they are protected by qualified immunity because neither the non-punitive stay nor the process provided were constitutionally violative under clearly established law.

### i. Qualified Immunity

It is clearly established that a lengthy confinement in administrative segregation requires "meaningful review." Brown v. Oregon Dep't of Corr., 751 F.3d 983, 989–90 (9th Cir. 2014). In Brown, the Court noted that while "the baseline for determining 'atypical and significant hardship' is not entirely clear," Brown's twenty-seven-month confinement qualified "under any plausible baseline." Id. at 988. Though the defendants in Brown were entitled to immunity because the law was not clearly established at that time, the Ninth Circuit clarified that it violates an inmate's right to due process to receive no meaningful review of placement in administrative segregation over a lengthy period of time.

Plaintiff's nineteen-month stay was somewhat shorter than Brown's, but given the Ninth Circuit's holding in Brown that twenty-seven months without review was unconstitutionally lengthy "under any plausible baseline," it is beyond debate that a nineteen-month stay without any process is similarly prolonged. Brown provided fair warning to Defendants that such an action would be unconstitutional. Therefore, if Plaintiff received no meaningful review throughout his nineteen-month confinement in administrative segregation, Defendants violated clearly

established law. As there is a genuine issue of fact whether Plaintiff received such review, the Court must deny qualified immunity on this claim. <u>Sandoval</u>, 756 F.3d at 1160.

### ii. Summary Judgment

It remains a genuine dispute of material fact whether Plaintiff received any opportunity at all to be heard or whether there was any meaningful review at all. The Court finds that Defendants' own records illustrate that Plaintiff has repeatedly requested and been denied a hearing, and Defendants have failed to provide an actual record of the alleged classification hearing committee meetings in May 2015. The Court denies summary judgment on this claim.

### c. Count Three

In Count Three, Plaintiff alleges that Defendants violated his First Amendment right to receive mail. Defendants argue that Plaintiff fails to allege the personal participation of any Defendants during the incident in which an unidentified prison staff member discussed Plaintiff's mail in front of other inmates. They argue that the mail from the Nevada Supreme Court delayed by one week is not attributable to a particular Defendant and regardless not violative of the First Amendment.

Plaintiff has failed to present evidence implicating any particular Defendant in the mail-opening incident. The prison staff member involved in the incident remains unnamed. The denial of grievances related to this incident by named Defendants does not state a claim. <u>See</u> <u>Ramirez v. Galaza</u>, 334 F.3d 850, 860 (9th Cir. 2003).

Plaintiff's allegation that his mail was delayed is also inadequate to state a claim. Plaintiff does not allege or show an improper motive for his delayed mail. Without such a showing, an isolated delay or short-term disruption does not implicate the First Amendment. <u>See</u> <u>Crofton v. Roe</u>, 170 F.3d 957, 961 (9th Cir. 1999), <u>as amended</u> (May 5, 1999). The Court grants summary judgment on this claim.

### d. Count Four

In Count Four, Plaintiff alleges that Defendants retaliated against him by transferring him to ECSO. Defendants argue that, because the transfer back to NDOC was not adverse to Plaintiff, it cannot be considered retaliation.

In the prison context, a claim for First Amendment retaliation under § 1983 must establish five elements: "(1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005). No facts support the first requirement that a state actor has taken an adverse action against Plaintiff as the transfer was not an adverse action. The Court does not find that the transfer creates a genuine issue of disputed fact on this claim. Plaintiff does not provide any specific allegations or evidence to support his claim that ECSO is housing him in an unsafe environment. Therefore, the Court grants summary judgment on this claim.

## IV. CONCLUSION

**IT IS ORDERED** that Plaintiff's Motion for Leave of Court to File Untimely Supporting Memorandum of Law in Response to Motion for Summary Judgment (ECF No. 70) is **GRANTED**.

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 16) is **GRANTED** as to Count One against all Defendants in their personal capacities and Counts Three and Four against all Defendants in both their personal and official capacities, and **DENIED** as to Count One against all Defendants in their official capacities and as to Count Two against Defendants Tristan, Neven, Fiero, and Nash in both their personal and official capacities.

DATED: February 15, 2019.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**